1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| VANCOUVER CLINIC INC. P.S., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>AFFILIATED FM INSURANCE COMPANY, a Rhode Island corporation,<br><br>Defendant. | No.<br><br>**COMPLAINT FOR: (1) DECLARATORY RELIEF; (2) BREACH OF CONTRACT; (3) ANTICIPATORY REPUDIATION OF CONTRACT; (4) INSURANCE BAD FAITH; AND (5) VIOLATIONS OF CONSUMER PROTECTION ACT**<br><br>**JURY DEMAND** |

Plaintiff the Vancouver Clinic Inc. P.S. ("TVC") alleges as follows:

## I.  INTRODUCTION

1.      COVID-19 has infected more than 2.1 million people in the United States and caused more than 116,000 deaths.[1]  The World Health Organization has declared the outbreak of this communicable disease to be a pandemic.[2]  Government officials have implemented far-reaching measures to try to control and limit the spread of COVID-19.

---

[1]      *See Coronavirus in the U.S.: Latest Map and Case Count*, NYTIMES.COM (last accessed June 16, 2020), *available at* https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html.  To be clear, by citing articles and other authorities in support of its allegations, TVC is not incorporating or admitting anything in these articles and authorities beyond what it has alleged.

[2]      *See WHO Director-General's opening remarks at the media briefing on COVID-19*, WHO.INT (Mar. 11, 2020), *available at* https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

COMPLAINT FOR: (1) DECLARATORY RELIEF;
(2) BREACH OF CONTRACT; (3) ANTICIPATORY
REPUDIATION OF CONTRACT; (4) INSURANCE
BAD FAITH; AND (5) VIOLATIONS OF
CONSUMER PROTECTION ACT - 1

STEIN, SUDWEEKS & STEIN, PLLC
2701 FIRST AVE., SUITE 430
SEATTLE, WA 98121
PHONE 206.388.0660 FAX 206.286.2660

2.      In addition to causing an unfathomable loss of life, COVID-19 has devastated the economy.  COVID-19 has caused businesses to permanently shutter and tens of millions of Americans to lose their jobs.

3.      COVID-19 has inflicted particularly severe economic hardship on the healthcare industry.[3]  Healthcare providers make a sizable portion of their revenues from non-emergency visits and procedures.[4]  COVID-19 has made these visits and procedures for the most part impossible.[5]  The American Hospital Association has reported that hospitals are losing more than $50 billion per month.[6]  Recovery could take years.[7]

4.      TVC is a Washington state-based healthcare provider whose business has dropped precipitously because of COVID-19.  As soon as the scope of these losses started to become clear—and after it had confirmed the presence of COVID-19 at many of its clinics—TVC tendered a claim under its "all risk" insurance policy to its Rhode Island-based insurer, Defendant Affiliated FM Insurance Company ("AFM").

5.      Even though the policy provides for business interruption and other applicable coverages, AFM responded by trying to deny and/or limit TVC's claim in a way that is directly at

---

[3]      *See, e.g.,* Evan Bush, *Washington hospitals, community health centers face a new crisis: red ink*, SEATTLE TIMES (May 4, 2020), *available at* https://www.seattletimes.com/seattle-news/health/washington-hospitals-community-health-centers-face-a-new-crisis-red-ink/.

[4]      *See, e.g.,* Todd Frankel & Tony Romm, *Historic financial decline hits doctors, dentists and hospitals — despite covid-19 — threatening overall economy*, WASH. POST (May 4, 2020), *available at* https://www.washingtonpost.com/business/2020/05/04/financial-distress-among-doctors-hospitals-despite-covid-19-weighs-heavily-economy/; Dennis Thompson, *COVID-19 Leaves U.S. Hospitals in Financial Crisis*, WEBMD.COM (May 6, 2020), *available at* https://www.webmd.com/lung/news/20200506/covid-19-leaves-us-hospitals-in-financial-crisis#1; Jeff Lagasse, *U.S. hospitals are suffering financial damage due to COVID-19 pandemic, Kaufman Hall finds*, HEALTHCAREFINANCENEWS.COM (April 21, 2020), *available at* https://www.healthcarefinancenews.com/news/us-hospitals-are-suffering-financial-damage-due-covid-19-pandemic-kaufman-hall-finds.

[5]      *See* Robyn Bainbridge, *U.S. hospitals losing around $50 billion a month due to Covid-19*, INT'L TRAVEL & HEALTH INS. J. (May 4, 2020), *available at* https://www.itij.com/latest/news/us-hospitals-losing-around-50-billion-month-due-covid-19.

[6]      *See Hospitals and Health Systems Face Unprecedented Financial Pressures Due to COVID-19*, AM. HOSP. ASSOC. (May 2020), *available at* https://www.aha.org/system/files/media/file/2020/05/aha-covid19-financial-impact-0520-FINAL.pdf.

[7]      *See* Christina Farr, *U.S. hospitals are losing millions of dollars per day in the midst of the Covid-19 pandemic — and recovery may take years*, CNBC.COM (May 5, 2020), *available at* https://www.cnbc.com/2020/05/05/hospitals-losing-millions-of-dollars-per-day-in-covid-19-pandemic.html.

---

COMPLAINT FOR: (1) DECLARATORY RELIEF;
(2) BREACH OF CONTRACT; (3) ANTICIPATORY
REPUDIATION OF CONTRACT; (4) INSURANCE
BAD FAITH; AND (5) VIOLATIONS OF
CONSUMER PROTECTION ACT - 2

STEIN, SUDWEEKS & STEIN, PLLC
2701 FIRST AVE., SUITE 430
SEATTLE, WA 98121
PHONE 206.388.0660 FAX 206.286.2660

odds with the plain language of the very policy it drafted and its duties as an insurer.  In addition, AFM has unreasonably delayed in making a coverage determination.

6.      AFM's bad-faith conduct forced TVC to bring this lawsuit.  TVC is asking this Court to require AFM to honor its policy and cover the losses that TVC has incurred because of COVID-19.

## II.  THE PARTIES

7.      TVC was founded 80 years ago and is a professional association of physicians that is locally owned and governed, operating eight medical clinics in the Vancouver, Washington-area. TVC is a Washington corporation with its principal place of business at 700 NE 87th Avenue, Vancouver, Washington, 98664.

8.      AFM is a Rhode Island corporation with its principal place of business at 270 Central Avenue, Johnston, Rhode Island, 02919.

## III.  JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship as to the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs.  As set forth below, TVC has suffered property damage and business interruption losses in an amount that it will prove at trial but that it believes exceed $20,000,000.  These losses are ongoing and could increase substantially depending on the length and ultimate severity of the COVID-19 outbreak and the government response.

10.      Venue is proper under 28 U.S.C. § 1391 because TVC's principal place of business is in the Western District of Washington and a substantial portion of the events and omissions giving rise to TVC's claim and losses occurred within the Western District of Washington.

///

///

///

COMPLAINT FOR: (1) DECLARATORY RELIEF; (2) BREACH OF CONTRACT; (3) ANTICIPATORY REPUDIATION OF CONTRACT; (4) INSURANCE BAD FAITH; AND (5) VIOLATIONS OF CONSUMER PROTECTION ACT - 3

STEIN, SUDWEEKS & STEIN, PLLC
2701 FIRST AVE., SUITE 430
SEATTLE, WA 98121
PHONE 206.388.0660 FAX 206.286.2660

## IV.  FACTUAL BACKGROUND

**A.      AFM's Policy Provides TVC with Up to $300 Million in Coverage, including for Business Interruption Losses**

11.      AFM sold an insurance policy to TVC (the "Policy") providing coverage against "ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded."  A true and correct copy of the Policy is attached hereto as Exhibit "A."  The Policy term is January 1, 2020 to January 1, 2021.

12.      Pursuant to the "Communicable Disease – Property Damage" coverage, the Policy expressly covers, among other things, the reasonable and necessary costs incurred by TVC for the: "a) Cleanup, removal and disposal of such presence of **communicable disease**[8] from insured property . . ."

13.      The term "**communicable disease**" is defined in the Policy to mean a disease which is: ". . . Transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges."  In a letter to TVC dated March 31, 2020, AFM admitted that COVID-19 is a **communicable disease** as defined in the AFM policy.

14.      As set forth above, AFM's coverage grant specifically provides that the Policy only covers "PHYSICAL LOSS OR DAMAGE."  If, as AFM admits, the Policy provides coverage for loss or damage caused by **communicable disease**, it must follow that **communicable disease** (including COVID-19) causes physical loss or damage to property.

15.      Furthermore, by providing for the "[c]leanup, removal and disposal of . . . **communicable disease**," the Policy explicitly recognizes that **communicable disease** physically damages property.  Because the Policy specifically covers remediation of the damage caused by **communicable disease**, the physical damage to property caused by **communicable disease** is "physical damage of the type insured" under the Policy.

---

[8]      Terms defined in the Policy are signified by the use of bold typeface. Unless otherwise stated, the use of bold typeface signifies the use of a specifically defined Policy term.

COMPLAINT FOR: (1) DECLARATORY RELIEF;
(2) BREACH OF CONTRACT; (3) ANTICIPATORY
REPUDIATION OF CONTRACT; (4) INSURANCE
BAD FAITH; AND (5) VIOLATIONS OF
CONSUMER PROTECTION ACT - 4

STEIN, SUDWEEKS & STEIN, PLLC
2701 FIRST AVE., SUITE 430
SEATTLE, WA 98121
PHONE 206.388.0660 FAX 206.286.2660

16.     The terms "physical," "loss" or "damage" are not defined in the Policy.  Undefined terms in a policy are to be interpreted in accord with the understanding of the average purchaser of insurance, and the terms are to be given their plain, ordinary and popular meaning, which should be determined by reference to dictionary definitions. *See Kut Suen Liu v. Essex Ins. Co*., 185 Wash.2d 703, 713 (2016); *Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co*., 183 Wash.2d 485, 490-91 (2015).  An average purchaser of insurance would understand the phrase "physical loss or damage" to include property damage and business interruption losses resulting from the COVID-19 pandemic.

17.     With respect to Business Interruption Coverage the Policy's coverage grant provides: "This Policy insures Business Interruption loss, as provided in the Business Interruption Coverage, as a direct result of physical loss or damage of the type insured . . ."  As set forth above, loss or damage resulting from COVID-19 constitutes physical loss or damage of the type insured. Because the Policy is an all-risk policy, unless there is a specific exclusion that bars coverage, there is coverage for TVC's business interruption losses.

18.     The All Risk Coverage form of the Policy initially contained an exclusion that provided that the Policy excluded: "Interruption of business, except to the extent provided in this Policy."  However, this general exclusion of "[i]nterruption of business" coverage was eliminated by the **WASHINGTON AMENDATORY ENDORSEMENT**.  Because the general exclusion for business interruption was removed from the Policy, contrary to AFM's position, business interruption coverage is not limited solely to the specific coverage extensions in the business interruption section of the Policy.  Rather, under the all-risk coverage grants of the Policy, business interruption is a covered peril unless there is a specific exclusion that bars coverage.

19.     AFM's position is that business interruption coverage resulting from COVID-19 is only possible under the Policy's **communicable disease** coverage extension because the Policy contains a "**contamination**" exclusion and the term "virus" falls within the definition of

COMPLAINT FOR: (1) DECLARATORY RELIEF;
(2) BREACH OF CONTRACT; (3) ANTICIPATORY
REPUDIATION OF CONTRACT; (4) INSURANCE
BAD FAITH; AND (5) VIOLATIONS OF
CONSUMER PROTECTION ACT - 5

STEIN, SUDWEEKS & STEIN, PLLC
2701 FIRST AVE., SUITE 430
SEATTLE, WA 98121
PHONE 206.388.0660 FAX 206.286.2660

"**contamination**."[9]  However, the Policy's **WASHINGTON AMENDATORY**

**ENDORSEMENT** provides that loss or damage resulting from **contamination** is excluded only if

**contamination** "[d]irectly and solely results in the loss or damage" or "[i]nitiates a sequence of

events that results in loss or damage."  AFM's **contamination** exclusion does not bar coverage for

TVC's business interruption losses because **contamination**, a condition of property due to the

actual or suspected presence of a virus, did not directly and solely cause TVC's loss.  Nor did

contamination "initiate a sequence" of events that caused TVC's business interruption losses.

Rather, the initiating cause of TVC's losses was a **communicable disease** as that term is defined in

the Policy.[10]

20.     Even if the **contamination** exclusion was applicable to TVC's claim, there would

still be coverage under the concurrent peril doctrine.  Under Washington law if an excluded peril

(**contamination**) combines with a covered peril (**communicable disease,** business interruption**,**

decontamination, or any other covered peril) the claim is covered as a matter of law. *See Sunwood*

*Condo. Ass'n v. Travelers Cas. Ins. Co. of Am.*, 2017 U.S. Dist. LEXIS 189892, at *25 (W.D.

Wash. Nov. 16, 2017)

21.     Even if the **contamination** exclusion was applicable to TVC's claim, the

**WASHINGTON AMENDATORY ENDORSEMENT** adds a resulting loss provision that is

applicable to the **contamination** exclusion that provides: ". . . if loss or damage not excluded

results, then that resulting loss or damage is covered."  As business interruption, **communicable**

---

[9]     The Policy provides that "**contamination** means any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew."

[10]    According to the World Health Organization: "People can catch COVID-19 from others who have the virus. The disease spreads primarily from person to person through small droplets from the nose or mouth, which are expelled when a person with COVID-19 coughs, sneezes, or speaks. These droplets are relatively heavy, do not travel far and quickly sink 1 to the ground. People can catch COVID-19 if they breathe in these droplets from a person infected with the virus.  These droplets can land on objects and surfaces around the person such as tables, doorknobs and handrails. People can also become infected by touching these objects or surfaces, then touching their eyes, nose or mouth." *Q&A on Coronaviruses (COVID-19)*, WHO.INT (April 17, 2020), *available at* https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/q-a-coronaviruses.

COMPLAINT FOR: (1) DECLARATORY RELIEF;
(2) BREACH OF CONTRACT; (3) ANTICIPATORY
REPUDIATION OF CONTRACT; (4) INSURANCE
BAD FAITH; AND (5) VIOLATIONS OF
CONSUMER PROTECTION ACT - 6

STEIN, SUDWEEKS & STEIN, PLLC
2701 FIRST AVE., SUITE 430
SEATTLE, WA 98121
PHONE 206.388.0660 FAX 206.286.2660

1  **disease**, and/or decontamination are covered loss or damage under the Policy, TVC's claim is

2  covered under this resulting loss provision.

3       22.     In addition to the coverage for TVC's business interruption losses under the "all

4  risk" coverage grant in the Business Interruption section of the Policy, the Policy contains at least

5  five applicable specific coverage extensions to its Business Interruption coverage.

6       23.     The first is a "Civil or Military Authority" extension covering loss that TVC incurs

7  "if an order of civil or military authority prohibits access to a **location** provided such order is the

8  direct result of physical damage of the type insured at a **location** or within five (5) statute miles of

9  it."

10       24.     The second is a "Communicable Disease" extension covering loss that TVC incurs

11  if any of its clinics has the "actual" presence of **communicable disease** and access to the clinic is

12  "limited, restricted or prohibited" by an "order of an authorized government agency regulating

13  such presence" of **communicable disease**.  Under this extension, coverage applies "[i]f a

14  **described location** owned, leased or rented by the Insured has the actual not suspected presence of

15  **communicable disease** and access to such **described location** is limited, restricted or prohibited

16  by: **a)** An order of an authorized governmental agency regulating such presence of **communicable**

17  **disease**; or **b)** A decision of an Officer of the Insured as a result of such presence of

18  **communicable disease**."

19       25.     The third is an "Ingress/Egress" extension covering loss that TVC incurs when

20  "ingress to or egress from a [TVC location] is physically prevented, either partially or totally, as a

21  direct result of physical loss or damage of the type insured to property of the type insured . . ."

22       26.     The fourth is an "Attraction Property" extension covering loss that TVC incurs

23  "directly resulting from physical loss or damage of the type insured to property of the type insured

24  that attracts business" to a TVC clinic.

25       27.     The fifth is a "Protection and Preservation of Property" extension covering loss that

26

27  COMPLAINT FOR: (1) DECLARATORY RELIEF;
(2) BREACH OF CONTRACT; (3) ANTICIPATORY
REPUDIATION OF CONTRACT; (4) INSURANCE
BAD FAITH; AND (5) VIOLATIONS OF
CONSUMER PROTECTION ACT - 7

STEIN, SUDWEEKS & STEIN, PLLC
2701 FIRST AVE., SUITE 430
SEATTLE, WA 98121
PHONE 206.388.0660 FAX 206.286.2660

TVC incurs "for a period of time not exceed 48 hours prior to and 48 hours after [TVC] first tak[es] responsible action for the temporary protection and preservation of property insured by this Policy provided such action is necessary to prevent immediately impending insured physical loss or damage to such insured property."

28.     In addition to providing coverage under the provisions identified above, the Policy covers other applicable losses.  For example, the Policy's "Decontamination Costs" provision covers the cost of TVC decontaminating its clinics to satisfy any law or ordinance regulating the contamination if the contamination is a "direct result of insured physical damage" and "there is in force at the time of the loss any law or ordinance" regulating the contamination.

29.     TVC has paid AFM significant premiums to obtain these coverages.

**B.     COVID-19 is a Communicable Disease that Has Spread Throughout Washington State, including Where TVC's Clinics are Located**

30.     COVID-19 is a communicable disease that can be spread from person-to-person and on contaminated surfaces.[11]

31.     Washington state has been at the forefront of the COVID-19 outbreak in the United States, with the first confirmed case and death.[12]  Through June 16, 2020, Washington has had more 25,000 COVID-19 cases and more than 1,200 deaths.[13]  There has been an outbreak of cases in the Vancouver, Washington area, where TVC's clinics are located.[14]

---

[11]     *See Modes of transmission of virus causing COVID-19: implications for IPC precaution recommendations*, WHO.INT (Mar. 29, 2020), *available at* https://www.who.int/news-room/commentaries/detail/modes-of-transmission-of-virus-causing-covid-19-implications-for-ipc-precaution-recommendations; *Coronavirus Disease 2019 – How It Spreads*, CDC.GOV (June 1, 2020), *available at* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html; Bill Chappell & Allison Aubrey, *CDC Advice On Surface Spread Of COVID-19 'Has Not Changed,' Agency Says*, NPR.ORG (May 22, 2020), *available at* https://www.npr.org/sections/coronavirus-live-updates/2020/05/22/861193550/advice-on-surface-spread-of-covid-19-has-not-changed-cdc-says.

[12]     *See* Hallie Golden, *Why Washington state is at the center of the US coronavirus outbreak*, THE GUARDIAN (Mar. 14, 2020), *available at* https://www.theguardian.com/world/2020/mar/14/coronavirus-washington-state-us-outbreak.

[13]     *See 2019 Novel Coronavirus Outbreak (Covid-19) - Current Status in Washington State*, DOH.WA.GOV (last accessed June 16, 2020), *available at* https://www.doh.wa.gov/Emergencies/Coronavirus

[14]     *See* Craig Brown, *Clark County coronavirus cases jump to 76, with one new death reported*, THE COLUMBIAN (Mar. 27, 2020), *available at* https://www.columbian.com/news/2020/mar/27/clark-county-coronavirus-cases-jump-to-

COMPLAINT FOR: (1) DECLARATORY RELIEF;
(2) BREACH OF CONTRACT; (3) ANTICIPATORY
REPUDIATION OF CONTRACT; (4) INSURANCE
BAD FAITH; AND (5) VIOLATIONS OF
CONSUMER PROTECTION ACT - 8

STEIN, SUDWEEKS & STEIN, PLLC
2701 FIRST AVE., SUITE 430
SEATTLE, WA 98121
PHONE 206.388.0660 FAX 206.286.2660

**C.    Government Officials Have Issued Orders Limiting Business Activity, including by Halting Non-Urgent Medical Procedures in Washington**

32.    Federal, state and local officials have issued various orders limiting business and other activities in response to COVID-19, including the following:

      a.    President Trump issued a proclamation declaring a national emergency because of COVID-19 on March 13, 2020.[15]

      b.    Washington Governor Jay Inslee proclaimed a State of Emergency relating to COVID-19 on February 29, 2020, and issued a "stay at home" proclamation on March 23, 2020.  In doing so, Governor Inslee, noted that COVID-19 had "broadly spread" through Washington, "continues to threaten the life and health of our people as well as the economy of Washington State," and "remains a public disaster affecting life, health, property or the public peace."[16]

      c.    Governor Inslee also issued a proclamation on March 19, 2020 restricting non-urgent medical procedures.[17]

**D.    TVC Confirms the Presence of COVID-19 in at Least Five of its Clinics**

33.    TVC first confirmed the presence of COVID-19 in one of its clinics on March 6, 2020.

---

76-with-one-new-death-reported/; Troy Brynelson, *How An Outbreak Showed Clark County Was Ready to Reopen*, OPB.COM (June 9, 2020), *available at* https://www.opb.org/news/article/washington-state-clark-county-covid-19-coronavirus-outbreak-readiness-reopening/.

[15]    Donald Trump, *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, WHITEHOUSE.GOV (Mar. 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/

[16]    Jay Inslee, *Proclamation By The Governor Amending Proclamation 20-05 – 20-25 – Stay Home – Stay Healthy*, OFFICE OF THE GOVERNOR (Mar. 23, 2020), *available at* https://www.governor.wa.gov/sites/default/files/proclamations/20-25%20Coronavirus%20Stay%20Safe-Stay%20Healthy%20%28tmp%29%20%28002%29.pdf?utm_medium=email&utm_source=govdelivery

[17]    Jay Inslee, *Proclamation By The Governor Amending Proclamation 20-05 – 20-24 – Restrictions on Non Urgent Medical Procedures*, OFFICE OF THE GOVERNOR (Mar. 19, 2020), *available at* https://www.governor.wa.gov/sites/default/files/20-24%20COVID-19%20non-urgent%20medical%20procedures%20%28tmp%29.pdf?utm_medium=email&utm_source=govdelivery

COMPLAINT FOR: (1) DECLARATORY RELIEF;
(2) BREACH OF CONTRACT; (3) ANTICIPATORY
REPUDIATION OF CONTRACT; (4) INSURANCE
BAD FAITH; AND (5) VIOLATIONS OF
CONSUMER PROTECTION ACT - 9

STEIN, SUDWEEKS & STEIN, PLLC
2701 FIRST AVE., SUITE 430
SEATTLE, WA 98121
PHONE 206.388.0660 FAX 206.286.2660

34.     Through May 26, 2020, TVC has confirmed the presence of COVID-19 in at least five of its clinics, with at least 196 confirmed COVID-19 cases.  These five clinics are: the 87th Avenue Clinic (700 NE 87th Ave, Vancouver, WA 98664); the Columbia Tech Center Clinic (501 SE 172nd Ave, Vancouver, WA 98684); the Ridgefield Clinic (5515 Pioneer Street, Ridgefield, WA 98642); the Salmon Creek Clinic (2525 NE 139th Street, Vancouver, WA 98686); and the Battle Ground Clinic (2005 W Main Street, Battle Ground, WA 98604).

35.     TVC is informed and believes, and based thereon alleges, that based on the confirmed presence of COVID-19 in these clinics, and the large number of infections throughout Washington and in the Vancouver, Washington-area, that there also has been the presence of COVID-19 in or close to its other medical clinics: the Vancouver Plaza Neighborhood (7809 NE Vancouver Plaza Dr, Suite 110, Vancouver, WA 98662), the Washougal Clinic (291 C Street, Suite 110, Washougal, WA 98671), and the Heron Gate (Vision Center) (2 South 56th Place, Suite 205, Ridgefield, WA 98642).

36.     The Policy identifies on its Location Schedule each of the foregoing clinics.

**E.      COVID-19 and the Related Government Orders Have Interrupted TVC's Business, Causing it to Suffer Substantial Losses**

37.     COVID-19 and the related government orders have interrupted TVC's business, causing it to suffer substantial losses.

38.     Although it is still assessing the scope of its losses, compared to the same time last year, between March and June of 2020 TVC's revenue has dropped by at least approximately $20,000,000 at its clinics.  These losses are ongoing and could increase substantially depending on the length and ultimate severity of the COVID-19 outbreak and the government response.

39.     TVC also has incurred significant additional expenses relating to COVID-19, including by having to purchase a massive amount of Personal Protective Equipment, and by implementing and undertaking extensive cleaning, safety and other related protocols to try to

COMPLAINT FOR: (1) DECLARATORY RELIEF;
(2) BREACH OF CONTRACT; (3) ANTICIPATORY
REPUDIATION OF CONTRACT; (4) INSURANCE
BAD FAITH; AND (5) VIOLATIONS OF
CONSUMER PROTECTION ACT - 10

ensure the safety of its providers and patients.  These expenses exceed $500,000 and will continue to be incurred for the foreseeable future.

**F.     TVC Tendered its Claim, Triggering Multiple Coverages Under the Policy**

40.     On March 17, 2020, TVC, through its insurance broker, tendered a claim to AFM for "[l]osses due to communicable disease COVID-19." A true and correct copy of TVC' tender is attached as Exhibit "B."  TVC did not limit its claim to a particular coverage provision but instead sought coverage on all applicable property and business interruption coverage options.  After tendering its claim, TVC continued to provide AFM with information relating to its claim, informing AFM that it had confirmed the presence of COVID-19 in at least five of its locations.

41.     By tendering its claim, TVC triggered multiple coverages under the Policy, including: "all risk" coverage; Business Interruption coverage; Extra Expense coverage; Communicable Disease extension; Civil or Military Authority extension; Ingress/Egress extension; Attraction Property extension; Protection and Preservation of Property extension; and Decontamination coverage.  Each of these coverages is detailed above.

**G.     AFM Handled TVC's Claim Improperly and in Bad Faith**

42.     In its March 30 and April 1, 2020 letters responding to TVC's claim (true and correct copies of which are attached hereto as Exhibits "C" and "D," respectively), AFM made clear that it is trying to bar and/or limit TVC's claim in at least three improper ways:

    a.  First, AFM divided TVC's claim into two separate claims, one involving clinics that had confirmed the presence of COVID-19 and another involving clinics that did not.  TVC is informed and believes, and based thereon alleges, that AFM split TVC's claim to try to avoid having to cover losses stemming from TVC clinics that had not yet confirmed the presence of COVID-19.

    b.  Second, AFM wrote that TVC's claim relating to its clinics that had not yet confirmed the presence of COVID-19 concerned "financial loss due to the number

COMPLAINT FOR: (1) DECLARATORY RELIEF;
(2) BREACH OF CONTRACT; (3) ANTICIPATORY
REPUDIATION OF CONTRACT; (4) INSURANCE
BAD FAITH; AND (5) VIOLATIONS OF
CONSUMER PROTECTION ACT - 11

STEIN, SUDWEEKS & STEIN, PLLC
2701 FIRST AVE., SUITE 430
SEATTLE, WA 98121
PHONE 206.388.0660 FAX 206.286.2660

of patient visits." TVC is informed and believes, and based thereon alleges, that AFM characterized TVC's losses stemming from these clinics in this manner to avoid having to provide coverage for them.

    c. Third, AFM wrote that TVC's claim relating to the clinics that had confirmed the presence of COVID-19 (what AFM referred to as "Communicable Disease Response and Interruption by Communicable Disease") would be subject to a "$100,000 Property Damage and $100,000 Time Element annual aggregate limit." TVC is informed and believes, and based thereon alleges, that AFM used this language to try to pigeonhole TVC's losses stemming from these clinics into low-limit coverage provisions.

43.    By focusing solely on the communicable disease coverages in its acknowledgement letter, AFM sent a clear message that it was not prepared to consider TVC's significant losses under any of the Policy's other coverages, despite these losses being covered under these coverages. AFM also failed to inform TVC of the coverage provided by its Policy in violation of Washington Administrative Code ("WAC") 284-30-330(1) ("Misrepresenting pertinent facts or insurance policy provisions.") and WAC 284-30-330(13) ("Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.").

44.    Then, after sending its April 1, 2020 response, AFM engaged in delay tactics. AFM did not respond to the additional information that TVC provided. Nor did it render a coverage determination in a timely manner. AFM instead engaged in unreasonable delay in violation of Washington law. *See, e.g.,* WAC 284-30-370 ("Every insurer must complete its investigation of a claim within thirty days after notification of claim, unless the investigation cannot reasonably be completed within that time.").

45.    AFM's bad-faith conduct forced TVC to retain counsel, which sent AFM a letter

COMPLAINT FOR: (1) DECLARATORY RELIEF;
(2) BREACH OF CONTRACT; (3) ANTICIPATORY
REPUDIATION OF CONTRACT; (4) INSURANCE
BAD FAITH; AND (5) VIOLATIONS OF
CONSUMER PROTECTION ACT - 12

STEIN, SUDWEEKS & STEIN, PLLC
2701 FIRST AVE., SUITE 430
SEATTLE, WA 98121
PHONE 206.388.0660 FAX 206.286.2660

dated June 11, 2020 explaining why AFM's attempts to deny and/or limit TVC's claim were improper.  In the letter, TVC's counsel advised AFM that it needed to issue a coverage determination by June 22, 2020, otherwise TVC would file a lawsuit.  A true and correct copy of this letter is attached as Exhibit "E."  AFM did not issue a coverage determination by June 22, 2020 but instead engaged in further delay.

**H.  AFM's Bad-Faith Handling of TVC's Claim is Part of a Systematic Practice it Has Implemented to Try to Deny and/or Limit COVID-19 Claims**

46.  A copy of AFM's "Talking Points" relating to COVID-19 claims has become publicly available.  A true and correct copy of AFM's Talking Points is attached hereto as Exhibit "F."

47.  TVC is informed and believes, and based thereon alleges, that AFM's systematic practice in dealing with COVID-19 claims is outlined in its "Talking Points," which were prepared for AFM claim adjusters to use to ensure that they reach the same conclusion for all COVID-19 claims.  These Talking Points demonstrate that AFM's handling of TVC's claim is part of a larger pattern and practice that AFM has implemented to try to deny and/or limit COVID-19 claims.  For example, AFM's Talking Points:

a.  state that the "Civil or Military Authority" and "Ingress/Egress" Business Interruption coverage extensions do not apply even though government orders implemented because of the COVID-19 pandemic necessarily have prohibited and/or limited access to policyholder locations, including AFM's clinics;

b.  state that the "presence of a communicable disease does not constitute physical damage" even though the Policy itself recognizes that a "**communicable disease**" constitutes physical damages; and

c.  coach adjusters to steer policyholders toward low-limit coverage provisions (as AFM has tried to do with TVC).

COMPLAINT FOR: (1) DECLARATORY RELIEF;
(2) BREACH OF CONTRACT; (3) ANTICIPATORY
REPUDIATION OF CONTRACT; (4) INSURANCE
BAD FAITH; AND (5) VIOLATIONS OF
CONSUMER PROTECTION ACT - 13

STEIN, SUDWEEKS & STEIN, PLLC
2701 FIRST AVE., SUITE 430
SEATTLE, WA 98121
PHONE 206.388.0660 FAX 206.286.2660

48.      Even AFM's Talking Points recognize, however, that it "offers some of the broadest property coverage available," and that the critical factor in determining if coverage applies is the "actual" presence of COVID-19 at a policyholder's location.  As addressed above, even though TVC has confirmed the presence of COVID-19 in at least five of its locations, AFM still fails to acknowledge that its Policy cover's TVC's claim.

## FIRST CLAIM – FOR DECLARATORY RELIEF THAT THE POLICY PROVIDES COVERAGE

49.      TVC repeats and realleges the allegations in the preceding paragraphs.

50.      TVC seeks the Court's declaration of the parties' rights and duties under the Policy pursuant to 28 U.S.C. § 2201(a).  An actual controversy exists between TVC and AFM concerning the availability of coverage under the Policy for TVC's claim.

51.      The controversy between TVC and AFM is ripe for judicial review, including for at least the following reasons:

    a.   TVC tendered its claim to AFM on March 17, 2020, AFM has acknowledged receipt of the claim, and AFM has had more than sufficient time to make a coverage determination but has unreasonably delayed in doing so in violation of WAC 284-30-370.

    b.   AFM has failed to timely pay TVC for the covered losses that it has incurred.

    c.   AFM's communications with TVC show that it has already divided TVC's claim and, further, that it has done so in a manner designed to limit coverage for losses incurred at the clinics that have confirmed the presence of COVID-19 and to deny coverage for losses incurred at the clinics that have not yet confirmed the presence of COVID-19.

52.      TVC seeks a declaration from the Court that:

    a.   TVC's claim triggered coverage under the Policy, including coverage under the

COMPLAINT FOR: (1) DECLARATORY RELIEF;
(2) BREACH OF CONTRACT; (3) ANTICIPATORY
REPUDIATION OF CONTRACT; (4) INSURANCE
BAD FAITH; AND (5) VIOLATIONS OF
CONSUMER PROTECTION ACT - 14

STEIN, SUDWEEKS & STEIN, PLLC
2701 FIRST AVE., SUITE 430
SEATTLE, WA 98121
PHONE 206.388.0660 FAX 206.286.2660

1        Policy provisions described above;

2           b.   No exclusions in the Policy apply to bar or limit coverage for TVC's claim; and

3           c.   The Policy covers TVC's claim.

4        **<u>SECOND CLAIM – FOR BREACH OF CONTRACT</u>**

5       53.    TVC repeats and realleges the allegations in the preceding paragraphs.

6       54.    The Policy is a valid and enforceable contract between TVC and AFM.

7       55.    In the Policy, AFM agreed to cover TVC's clinics against all risks of physical loss

8 or damage not otherwise excluded, including coverage for Business Interruption, Extra Expense,

9 Communicable Disease, Civil or Military Authority extension, Ingress/Egress Attraction Property,

10 Protection and Preservation of Property, and Decontamination.

11       56.    There are no exclusions in the Policy that bar coverage.

12       57.    TVC has complied and is ready to comply with all applicable Policy provisions,

13 including by paying premiums and providing timely notice of its claim.

14       58.    AFM has breached the Policy in material ways described above, including by

15 failing to timely pay TVC for covered losses that it has incurred.

16       59.    TVC has suffered and continues to suffer damages as a result of AFM's breach of

17 the Policy in an amount to be determined at trial, including pre-judgment interest.

18       60.    As a direct and proximate result of AFM's breach of its contractual duties, TVC has

19 been forced to incur attorneys' fees, expert costs, investigation costs and other expenses in order to

20 prosecute this action, the sole purpose of which is to obtain the benefits of TVC's insurance

21 contracts.

22      **<u>THIRD CLAIM – FOR ANTICIPATORY REPUDIATION OF CONTRACT</u>**

23       61.    TVC repeats and realleges the allegations in the preceding paragraphs.

24       62.    The Policy is a valid and enforceable contract between TVC and AFM.

25       63.    In the Policy, AFM agreed to cover TVC's clinics against all risks of physical loss

26

27
COMPLAINT FOR: (1) DECLARATORY RELIEF;       STEIN, SUDWEEKS & STEIN, PLLC
(2) BREACH OF CONTRACT; (3) ANTICIPATORY    2701 FIRST AVE., SUITE 430
REPUDIATION OF CONTRACT; (4) INSURANCE      SEATTLE, WA 98121
BAD FAITH; AND (5) VIOLATIONS OF     PHONE 206.388.0660 FAX 206.286.2660
CONSUMER PROTECTION ACT - 15

or damage not otherwise excluded, including coverage for Business Interruption, Extra Expense, Communicable Disease, Civil or Military Authority extension, Ingress/Egress Attraction Property, Protection and Preservation of Property, and Decontamination.

64.     There are no exclusions in the Policy that bar coverage.

65.     TVC has complied and is ready to comply with all of its obligations under the Policy, including by paying premiums and providing timely notice of its claim.

66.     Even though TVC has complied and is ready to comply with its obligations under the Policy, AFM informed TVC that it was dividing TVC's claim into two separate claims (one involving clinics that had confirmed the presence of COVID-19; the other involving clinics that did not), shoehorning the "first" claim into a low-limit coverage provision, and characterizing the "second" claim in a way that would result in a denial of coverage.

67.     AFM's statements to this effect were positive and unequivocal expressions that AFM was repudiating and would not fully and completely perform is obligations under the Policy.

68.     AFM has failed to timely pay TVC for covered losses that it has incurred.  AFM also has failed to set forth any reason as to why it has not reached a coverage determination on a claim that was tendered to it on March 17, 2020.

69.     As a result of AFM's conduct, TVC has suffered and continues to suffer damages in an amount to be determined at trial, including prejudgment interest.

70.     As a direct and proximate result of AFM's breach of its contractual duties, TVC has been forced to incur attorneys' fees, expert costs, investigation costs and other expenses in order to prosecute this action, the sole purpose of which is to obtain the benefits of TVC's insurance contracts.

## FOURTH CLAIM – FOR INSURANCE BAD FAITH

71.     An insurer owes its insured an independent duty of good faith under Washington law, including to deal fairly with the insured and to not engage in any action that demonstrates a

COMPLAINT FOR: (1) DECLARATORY RELIEF; (2) BREACH OF CONTRACT; (3) ANTICIPATORY REPUDIATION OF CONTRACT; (4) INSURANCE BAD FAITH; AND (5) VIOLATIONS OF CONSUMER PROTECTION ACT - 16

STEIN, SUDWEEKS & STEIN, PLLC
2701 FIRST AVE., SUITE 430
SEATTLE, WA 98121
PHONE 206.388.0660 FAX 206.286.2660

greater concern for its own financial interest than the insured's financial risk. *See, e.g.,* Revised Code of Washington ("RCW") 48.01.030 ("The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, their providers, and their representatives rests the duty of preserving inviolate the integrity of insurance.").

72.     The duty of good faith requires an insurer to conduct a reasonable investigation before refusing to pay a claim submitted by its insured.  An insurer must also have a reasonable justification before refusing to pay a claim.  An insurer who refuses to pay a claim, without conducting a reasonable investigation or without having a reasonable justification, fails to act in good faith.

73.     A violation of one or more of the Washington claim-handling standards set forth below is a breach of the duty of good faith, an unfair method of competition, an unfair or deceptive act or practice in the business of insurance, and a breach of the insurance contract. AFM's conduct violated Washington claim-handling standards, which:

a.  require it to fully disclose all pertinent coverages;

b.  prohibit misrepresentations regarding relevant facts or coverage;

c.  prohibit the practice of refusing to pay claims without conducting a reasonable investigation;

d.  require AFM to provide a reasonable explanation of the relevant facts, law, and policy language and how its policy language supported a denial of TVC's claim; and

e.  require a prompt and fair claims evaluation that does not put the insurer's interest ahead of its insured.

74.     AFM has failed to comply with the duty of good faith it owes TVC for the reasons identified above.  AFM's actions and omissions were unreasonable, unfounded, and frivolous

COMPLAINT FOR: (1) DECLARATORY RELIEF;
(2) BREACH OF CONTRACT; (3) ANTICIPATORY
REPUDIATION OF CONTRACT; (4) INSURANCE
BAD FAITH; AND (5) VIOLATIONS OF
CONSUMER PROTECTION ACT - 17

STEIN, SUDWEEKS & STEIN, PLLC
2701 FIRST AVE., SUITE 430
SEATTLE, WA 98121
PHONE 206.388.0660 FAX 206.286.2660

1  under the circumstances and constitute a breach of AFM's duty of good faith.

2      75.      As a direct and proximate result of AFM's conduct, TVC has been damaged in an

3  amount to be proven at trial.

4  **FIFTH CLAIM – FOR VIOLATIONS OF THE CONSUMER PROTECTION ACT**

5      76.      TVC repeats and realleges the allegations in the preceding paragraphs.

6      77.      AFM's violation of the claims-handling procedures set forth in WAC 284-30-370

7  are a *per se* violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86.010, *et*

8  *seq*.

9      78.      TVC is a consumer who is informed and believes, and based thereon alleges, that

10  AFM's conduct was deceptive, impacted the public, and had the capacity to deceive.

11      79.      As a result of AFM's violations, TVC has suffered and is continuing to suffer

12  damages, and is entitled to an award of damages in an amount to be determined at trial, along with

13  CPA penalties of up to $25,000 per violation and attorneys' fees under the CPA.

14  **PRAYER FOR RELIEF**

15      TVC prays for judgment against AFM as follows:

16      1.      For declaratory relief, including:

17          a.  TVC's claim triggered various coverage provisions in the Policy;

18          b.  No exclusions in the Policy apply to bar or limit coverage for TVC's claim;

19          c.  The Policy covers TVC's claim; and

20          d.  AFM owes money damages for TVC's covered claim.

21      2.      For money damages against AFM in an amount to be proven at trial but in excess of

22  $75,000;

23      3.      For pre- and post-judgment interest as provided by law;

24      4.      For an award of attorneys' fees and costs;

25      5.      For penalties and attorneys' fees under the CPA; and

26

27  COMPLAINT FOR: (1) DECLARATORY RELIEF;
(2) BREACH OF CONTRACT; (3) ANTICIPATORY
REPUDIATION OF CONTRACT; (4) INSURANCE
BAD FAITH; AND (5) VIOLATIONS OF
CONSUMER PROTECTION ACT - 18

STEIN, SUDWEEKS & STEIN, PLLC
2701 FIRST AVE., SUITE 430
SEATTLE, WA 98121
PHONE 206.388.0660 FAX 206.286.2660

6.     For such other and further relief as the Court deems just and proper.

**<u>JURY TRIAL DEMANDED</u>**

TVC demands trial by jury on all issues so triable.

Dates the 23rd day of June, 2020.

STEIN, SUDWEEKS & STEIN, PLLC


/s/ *Jerry H. Stein*
/s/ *Justin D. Sudweeks*
/s/ *Daniel J. Stein*
Jerry H. Stein, WSBA #27721
Justin D. Sudweeks, WSBA #28755
Daniel J. Stein, WSBA #48739
2701 First Avenue, Suite 430
Seattle, WA 98121
Telephone: (206) 388-0660
Facsimile: (206) 286-2660
Email: jstein@condodefects.com
Email: justin@condodefects.com
Email: dstein@condodefects.com
*Attorneys for Plaintiff*


**GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP**

/s/ *Steven A. Stein*
Steven A. Stein, *Pro Hac Vice Pending*
2049 Century Park East, 26th Floor
Los Angeles, CA 90067-3101
Telephone: (310) 553-3610
Facsimile: (310) 553-0687
Email: sstein@ggfirm.com
*Co-Counsel for Plaintiff*

COMPLAINT FOR: (1) DECLARATORY RELIEF; (2) BREACH OF CONTRACT; (3) ANTICIPATORY REPUDIATION OF CONTRACT; (4) INSURANCE BAD FAITH; AND (5) VIOLATIONS OF CONSUMER PROTECTION ACT - 19

STEIN, SUDWEEKS & STEIN, PLLC
2701 FIRST AVE., SUITE 430
SEATTLE, WA 98121
PHONE 206.388.0660 FAX 206.286.2660